JOHN DOE *ex dem.* DAVID MATHIS, and JAMES M. WHARTON, plaintiff in error, vs. RICHARD ROE casual ejector, and WILLIAM B. COLBERT, defendants in error.

[1.] The party who took out the commission to examine a witness was in the next room to that in which the Commissioners were executing the commission, and was so known to be, by the witness. The door between the two rooms was open.

*Held*, That this vitiated the execution of the commission.

[2.] The answers to interrogatories were headed with a case different from that stated in the questions and commission, but there appeared enough to show that the answers, were really intended for this latter case.

*Held*, That they might be read in the latter case.

[3.] After the close of the argument to the jury, the Court allowed the defendant to introduce further evidence on the subject of *mesne* profits. The plaintiff expressed no surprise, asked for no continuance. The verdict was for the defendant generally.

*Held*, That the Court committed no error; certainly none of which the plaintiffs could complain.

Ejectment from Stewart county. Tried before Judge KID-DOO, October 24th, 1857.

This case came on upon exceptions to the rulings, by the Judge of the Superior Court, admitting certain evidence and documents upon the trial in the Court below.

The plaintiff at the trial introduced a witness who testified that the defendant took possession of the land (the subject of the action,) in 1854 or 1855, and that he had retained it ever since. He also introduced a copy grant of the land, which was to "David Mathis of Dodge's district, Appling county," and certain deeds under which he claimed title to the land, viz: a deed dated in 1852, of David Mathis of Hamilton county, Florida, to Jesse Mobley—a deed from Jesse Mobley to Seaborn Hall—a deed from Seaborn Hall to James M. Wharton.

Plaintiff then closed.

The defendant introduced a witness named Smith, who testified (among other things) that he acted as Commissioner in executing a set of interrogatories in the case in which Bunyan Mathis was the witness; and that he did this at the request of Samuel W. Molder, (who was stated to be warrantor to the defendant of the land in question.)

"That Molder and the witness and the commissioners were in a room together, that Molder conversed with the witness about the case, and his testimony; that when the commissioners commenced taking down the testimony of the witness, Molder walked into another room in the same house, the door of the room in which witness was opening into the room where Molder went, and remained open all the time; that when the commissioners got through taking down the testimony of said Mathis, Molder came back into the room where they were." The witness also testified that he knew the reputation of Bunyan Mathis for truth in the neighbor-

hood where he lived, and that he would not believe him on his oath in a Court of Justice.

The following note was made by the Judge on the margin of the record opposite this testimony.   " The Court's recollection is that the commissioners and witness went into a room, and that Molder, though he had conversed with witness, did not enter the room till the interrogatories were executed.—
D. K., *J. S. C. P. C.*"

This witness also testified that he had been living in Hamilton county, Florida, ten years, and for three years, had been tax assessor and collector, for the county, and that he had never known any man living there named David Mathis, but had known a man living there named Bunyan Mathis.

The defendant then offered in evidence the answers of Bunyan Mathis to certain interrogatories.   To the reading of these, the plaintiffs counsel objected on the ground that Samuel W. Molder was present at the time of their execution as testified to by Smith one of the commissioners.   This objection was overruled by the Court and the plaintiff's counsel excepted.

After reading the evidence of several of the witnesses, the defendant's counsel offered to read in evidence to the jury the answers of John G. Smith to certain interrogatories.   To this the plaintiffs counsel objected, on the ground that it appeared by the answers that the interrogatories were taken out and executed in another case then pending in that Court, as they were headed with the title of that other cause.   The Court overruled this objection, and the plaintiffs counsel excepted.

The following note appeared on the margin of the record, made by the Judge of the Superior Court—" Notwithstanding the misstatement in one place, there was evidence appearing on the same, that they belonged to this case.
DAVID KIDDOO, *J. S. C. P. C.*"

Defendant's counsel having closed his case, the plaintiff's counsel (having no more evidence) opened the case to the jury, insisting (among other things) that defendant was not entitled to anything for improvements, as he had not shown any written title or deed to the premises in dispute.

The argument before the jury having been closed, both by counsel for the plaintiff and defendant, and when the Court was about commencing to charge the jury, defendant's counsel moved to introduce in evidence to the jury certain deeds; one of the counsel for the defendant stating that he had said deeds in his possession at the beginning of the case, intending to introduce them in evidence to the jury, but had omitted to do so, and still had the deeds in his possession.

The following note appeared on the margin of the record made by the Judge: " Court thinks forgotten, as well as omitted.                    D. K., *J. S. C. P. C.*"

The plaintiffs counsel objected to the admission of these deeds in evidence to the jury. The Court overruled this objection, and allowed the deeds to go in evidence to the jury.

Defendant's counsel then introduced in evidence to the jury, a deed of the lot of land from Jeffrey Barksdale to John Barksdale, a deed from John Barksdale to Samuel W. Molder, and a deed from Samuel W. Molder to the defendant, William B. Colbert. Plaintiff's counsel then and there excepting.

The jury found for the defendant; and plaintiff filed his bill of exceptions, saying that the Court erred:

1st. In not rejecting the answers of Bunyan Mathis to certain interrogatories and in allowing said answers to be read in evidence to the jury.

2d. In permitting the answers of John G. Smith to certain interrogatories to be read in evidence to the jury.

3d. In allowing the deeds from Jeffrey Barksdale to

John Barksdale, from John Barksdale to Samuel W. Molder, and from Samuel W. Molder to William B. Colbert, to be introduced and read in evidence to the jury after the argument of counsel before the jury had been closed, and when the Court was about commencing to charge the jury in said case.

4th. In allowing evidence to go before the jury after argument of counsel and when the Court was about charging the jury, it had been announced by counsel for plaintiff in their opening speech to the jury that defendants had exhibited no written title or deed to the premises in dispute, and were not on that ground entitled to anything for improvements.

Tucker & Beall, for plaintiff in error.

B. S. Worrill, and Jas. Johnson, for defendant in error.

*By the Court.*—Benning, J. delivering the opinion.

The tenant claimed under Molder by a deed with warranty. Molder was taking part in preparing the defence. Molder, therefore, bore towards the case a relation of the same sort, as that borne by the tenant. Therefore, whatever would, if done by the tenant, vitiate the execution of interrogatories would, if done by Molder, equally vitiate the execution of the interrogatories.

[1.] Did what was done by Molder in this case vitiate the execution of the interrogatories for Bunyan Mathis? The Court below thought that it did not, but we think that it did.

Molder was within ear-shot of the witness, and no doubt, known so to be by the witness. He had conversed with the witness about the case, and about his testimony; that is, the witness had told him what he would swear to. His position in the adjacent room, was a good one to enable him

to have the pledge redeemed. The case is in no respect different, so far as principle is concerned, from what it would have been if Molder had been in the room itself in which the testimony was being taken. *See* 19 *Ga. R.* 630.

We think then, that the Court erred in not rejecting the interrogatories of Bunyan Mathis. Does it follow that we ought to grant a new trial? This question will be considered in conclusion.

The next exception was to the decision allowing the interrogatories to John G. Smith to be read to the jury.

The objection to these was, that the case stated at the head of the *answers,* was not the same as the case on trial. The difference being, that in the case on trial, the tenant was *Colbert,* in the case as stated at the head of the answers, the tenant was *Brooks.* But the Judge certifies that there was evidence appearing on the answers, that they belonged to the case on trial.

The *questions* it seems were in the right case. If the answers were answers to those questions, they, we may presume, were also in the right case, whether headed so or not.

[2.] We see nothing in this objection.

The Court allowed the defendant to lay evidence before the jury after the close of the argument to the jury on both sides. This was excepted to by the plaintiff's counsel, but they expressed no surprise at the evidence. They asked for no continuance to enable them to meet the evidence.

[3.] This being so, we think that there is nothing that they can complain of in the decision. The subject of the order and mode of introduction of testimony is one committed to the discretion of the Court. We see no abuse of that discretion here.

Besides this evidence had no effect. It was offered as an answer to the demand of the plaintiff for *mesne profits ;* the verdict was for the defendant generally.

This disposes of all the exceptions—only one of which,

has been found to be good, that, to the admission of Bunyan Mathis's interrogatories.

Ought we to grant a new trial on the score of the improper admission of these interrogatories? The defendant's counsel says not. He says that there was evidence enough over and above these interrogatories to have required the verdict to be as it was; and that as there was no motion for a new trial, the case does not fall within the new trial Act of 1854, and therefore, that this Court must be governed by the common law rule, which forbids a verdict to be disturbed on the ground of illegal evidence, if there was sufficient legal evidence.

This we think is a good argument, if it be true that there was enough evidence over and above these interrogatories to require this verdict.

Is that true?

The plaintiff's own evidence showed that he claimed under David Mathis who in his deed made in 1852, described himself as of Hamilton county, Florida.

The grant was to "David Mathis of Dodge's district, Appling county." The testimony of several witnesses taken together traced up this David Mathis to the time of the suit, and showed him from 1826, or 1828, a citizen of some place in Georgia. It could not be, therefore, that it was he, who was the David Mathis of Hamilton county, Florida, in 1852, who made the deed under which the plaintiff claimed. It follows that that deed could convey no title.

Now the evidence, exclusive of Bunyan Mathis's interrogatories shows this.

And this is enough to require of the jury to find for the defendant.

We think then, that the counsel for the defendant is right in insisting that there ought not, on the ground of the admission of this evidence, to be a new trial.

So we affirm the decision of the Court below.

Judgment affirmed.